IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SHELLEY HAMILTON,

    Plaintiff,

v.

Case No: 3:14-cv-1367-J-3-PDB

FLAGLER COUNTY HOUSING AUTHORITY, and
MICHAEL BOYD, in his Official
Capacity as Executive Director of
the Flagler County Housing Authority,

    Defendants.

_____/

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND
MEMORANDUM OF LAW IN SUPPORT OF REQUEST**

Pursuant to Rule 65 of the Federal Rules of Civil Procedure and M.D. Loc. R. 4.06, Plaintiff Shelley Hamilton (Plaintiff or Ms. Hamilton), hereby respectfully moves this Honorable Court for an Order granting Plaintiff's Motion for Preliminary Injunction. As grounds therefore, Plaintiff incorporates by reference ¶¶ 8-56 of the Complaint, and further states:

    1.    Plaintiff seeks a Preliminary Injunction for the reasons set forth in the Complaint and Plaintiff's Memorandum of Law which is incorporated herein. Specifically, such relief is required to prevent her from becoming homeless as a result of the erroneous termination of her Section 8 Tenant-Based Assistance Housing Choice Voucher Program (Section 8 Voucher) on June 30, 2014.

2. Defendants, the Flagler County Housing Authority and Michael Boyd, have deprived Plaintiff of her constitutional right to Due Process pursuant to the Fourteenth Amendment to the United States Constitution by failing to provide Plaintiff with a hearing that comported with due process and the HUD regulations prior to depriving her of a property interest (i.e., her Section 8 Voucher). *Goldberg v. Kelley,* 397 U.S. 254, 664 (1970), 42 U.S.C. § 1437d(k) (2013) and 24 C.F.R. § 982.555 (2014).

3. Plaintiff seeks a Preliminary Injunction enjoining Defendants from terminating Plaintiff's Section 8 assistance pending resolution of this action.

4. Shelley Hamilton has received Section 8 assistance for approximately 14 years. (Ex. 1, ¶ 3).

5. In May of 2014, Ms. Hamilton received from FCHA, a "Notice of Intent to Terminate Assistance and HAP Contract," advising that her Section 8 rental assistance would be terminated effective June 30, 2014, and stating in relevant part:

> The reasons below reflect which regulation(s) is/are violated due to the family's actions or inactions:
>
> The owner may not charge or accept, from the family…any payment for rent of the unit in addition to the rent to owner, which has been determined by the PHA.
>
> It has come to my attention that you have been paying an additional $200.00 per month beyond what the PHA determined was your portion according to your reported income. This violation has occurred since the beginning of your initial lease, or December 1, 2008. (Ex. 2 and Ex. 1, ¶ 16).

6. Ms. Hamilton timely requested a hearing on the matter, and a hearing was held on June 4, 2014. (Ex. 1, ¶ 17; Ex. 3).

7. Chapter 16 of FCHA's Section 8 Administrative Plan describes FCHA's informal hearing procedures. (Ex. 4 at 16-16 to 16-22).

8. Pursuant to the Admin Plan, "the PHA and the family must be given the opportunity to present evidence and question any witnesses[,]" any "evidence to be considered by the hearing officer must be presented at the time of the hearing[,]" and "[f]actual determinations relating to the individual circumstances of the family must be based on a preponderance of the evidence presented at the hearing." (Ex. 4 at 16-20).

9. Following the hearing, the hearing officer must issue a written decision to the family and FCHA within 10 business days and containing:

   a. the names of the hearing officer, PHA representative, participant and participant's representative (if any);

   b. the date, time and place of the hearing;

   c. a brief, impartial statement of the reason for the hearing;

   d. a summary of the testimony of each witness;

   e. identification of documents admitted into evidence;

   f. the findings of fact based on a preponderance of the evidence presented at the hearing;

   g. a conclusion as to whether the facts uphold the PHA's decision; and

   h. an order instructing the PHA to act based on whether their decision is upheld or overturned. (Ex. 4 at 16-21).

10. Ms. Hamilton, Defendant Michael Boyd, and a friend of Ms. Hamilton's attended the hearing, with Michael Boyd serving as the hearing officer. (Ex. 1, ¶ 17).

11. No one attended the hearing as a representative of FCHA, and no evidence was presented by FCHA at the hearing. (Ex. 1, ¶¶ 18, 20; Ex. 5 at p. 2).

12. At the hearing, Ms. Hamilton testified that she had not been aware that a second lease and additional payment to the landlord were illegal, and that she would not have agreed to it had she known. Her testimony was the only evidence presented at the hearing. (Ex. 1, ¶ 19).

13. A decision was not issued at the end of the hearing. Following the hearing, Ms. Hamilton received a letter dated June 19, 2014, from Chris Beyrer, the Section 8 Manager, which stated:

> Dear Ms. Hamilton:
>
> This notice serves as confirmation of the determination reached at your informal hearing on June 4, 2014.
>
> Therefore your rental assistance will terminate June 30, 2014. (Ex. 6).

14. Ms. Hamilton did not receive a decision letter from the hearing officer within ten (10) days of the hearing and the letter that she received did not contain the elements as required by the Administrative Plan. (Ex. 5 at pp. 2-3).

15. Effective June 30, 2014, Defendants terminated Ms. Hamilton's participation in the Section 8 Program. (Ex. 2; Ex. 5 at p.2; Ex. 6).

16. On July 17, 2014, counsel for Ms. Hamilton sent a letter to the Board of Commissioners of the FCHA, requesting that they reconsider the decision to terminate Ms. Hamilton from the program, due to the lack of due process afforded by the hearing procedures. (Ex. 7).

17. Counsel for FCHA responded with a letter dated August 27, 2014, and enclosed a letter from Michael Boyd to Ms. Hamilton dated August 26, 2014. The subject of the letter was "Re-Issuance of Hearing Officer's Decision to Uphold Authority's Termination of Rental Housing Assistance previously mailed by Chris Beyrer on June 19, 2014." The letter stated, in part:

> ...you had been improperly paying an additional $200.00 per month in rent beyond what the Authority had previously determined and had advised you was your portion of the monthly rent based on your reported income. This conduct is a violation of Authority policy and/or HUD regulations/requirements and ground for termination of your housing assistance under the Authority's assisted housing program. Evidence provided by the Authority indicated that you have been engaging in this conduct since the beginning of your initial lease with the owner/management, or since December 1, 2008. The Authority's decision to terminate was supported by a preponderance of the evidence.

(Ex. 5).

18. The letter did not state the evidence upon which the hearing officer relied, nor did it state what FCHA policy or HUD regulation was violated by Ms. Hamilton. (Ex. 5).

19. The letter also confirms that the only FCHA staff present at the hearing was Michael Boyd and that he was there as a hearing officer, not as the representative of FCHA. (Ex. 5 at pp. 2-3).

20. With no Section 8 Voucher, Ms. Hamilton is unable to afford housing for herself and her son.

21. Without a Preliminary Injunction, Plaintiff will suffer imminent and irreparable injury based on the loss of her Section 8 Voucher; she will be left homeless because of Defendants' unconstitutional actions.

**WHEREFORE**, Plaintiff respectfully requests that this Court issue a Preliminary Injunction enjoining Defendants from violating Plaintiff's rights under the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, as established by the Supreme Court's decision in *Goldberg v. Kelley*, 397 U.S. 254 (1970), 42 U.S.C. § 1437d(k) and 24 C.F.R. § 982.555; and directing Defendants to reinstate Plaintiff's Section 8 Housing Choice Voucher Payments pending final resolution of this action.

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I.  PLAINTIFF MEETS THE STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF.**

To prevail on a motion for preliminary injunction, the movant must establish: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury to the movant outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest. *Alabama v. U.S. Army Corp. of Engineers*, 424 F.3d 1117, 1128 (11th Cir. 2009). In the instant case, Plaintiff satisfies all four factors.

**II.  PLAINTIFF HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS.**

Plaintiff has a substantial likelihood of success on her claims that Defendants denied her due process in violation of the Fourteenth Amendment to the United States Constitution, the U.S. Housing Act, and the U.S. Code of Federal Regulations. 42 U.S.C. § 1437d(k) and 24 C.F.R. § 982.555. A claim alleging a denial of procedural due process requires proof of three elements: 1) a deprivation of a constitutionally-protected liberty or property interest; 2)

6

state action; and 3) constitutionally-inadequate process. *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003).

Under the Fourteenth Amendment to the U.S. Constitution, "No state shall...deprive any person of life, liberty or property, without due process of law..." U.S. Const. amend. XIV, § 1. The central meaning of procedural due process is clear: "Parties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right, they must first be notified." *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972) (citation omitted). It is equally fundamental that the opportunity to be heard must be granted "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted). Ordinarily, due process requires an opportunity for a hearing prior to the deprivation of a significant property interest. *Goldberg,* 397 U.S. at 264 ("when welfare is discontinued, only a pre-termination evidentiary hearing provides the recipient with procedural due process."); *Colvin v. Hous. Auth. of the City of Sarasota*, 71 F.3d 864, 866-867 (11th Cir. 1996)(holding that a tenant receiving Section 8 assistance under 24 C.F.R. § 882.216 must receive a pre-termination hearing).

As demonstrated below, Plaintiff has established a substantial likelihood of establishing all of these elements on her due process claim.

**A. Deprivation of a Constitutionally Protected Property Interest**

Here, the FCHA terminated Ms. Hamilton from the Section 8 program without a pre-termination hearing that satisfies due process and the HUD regulations. Housing subsidies, such as Section 8 vouchers, are protected interests subject to the requirement of procedural due process. *Johnson v. Fort Walton Beach Hous. Auth.*, Case No. 3:11CV506, 2012 WL

10688344, *4 (N.D. Fla. Jan. 5, 2012)("Continued receipt of housing benefits is a property interest, and arbitrary termination of those benefits contrary to the public housing authority's administrative plan violates federal law."); *Lane v. Fort Walton Beach Hous. Auth.*, 518 F. Appx. 904, 910 (11th Cir. 2013)(parties did not dispute that PHA's termination of Section 8 assistance constitutes a deprivation of a constitutionally-protected property interest); *Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984)("participation in a public housing program is a property interest protected by due process"); *Escalera v. New York City Hous. Auth.*, 425 F.2d 853, 861 (2d Cir. 1970)(holding that "government cannot deprive a private citizen of his continued tenancy [in public housing], without affording him adequate procedural safeguards...").

## B. State Action

Defendant Michael Boyd is executive director of Defendant Flagler County Housing Authority. Defendant FCHA is an independent public corporation, organized and existing under Florida Statutes Chapter 421. Under 24 C.F.R. section 982.1, a PHA is a state or local government entity that administers the HUD Housing Choice Voucher Program. While Defendant FCHA distributes federal funds as a Section 8 administrator, receipt of federal funds does not convert its actions from being taken under color of state law. *Staten v. Hous. Auth. of Pittsburgh*, 638 F.2d 599, 603-604 (3d Cir. 1980); *see also Peete v. Palm Beach Cnty. Hous. Auth.*, Case No. 09-82365-CIV, 2010 WL 8750292, *5 (S.D. Fla. Apr. 27, 2010). Here, Defendants' actions to terminate Ms. Hamilton were taken under the color of state law in that they were taken based on Defendants' authority under state law. § 421.08, Fla. Stat. (2014); *see also Goldberg*, 397 U.S. 262 (1970)(the termination of welfare involved

a state action); *Billington v. Underwood*, 613 F.2d 91, 92 n.1 (5th Cir. 1980)[1](the actions of the housing authority were taken under color of state law); *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008)(accepting without discussion that housing authority was subject to § 1983 due process claim for improper termination of Section 8 benefits); *Lane*, 518 F. Appx. at 910 (11th Cir. 2013).

### C. Constitutionally Inadequate Process

The statutes and regulations governing the Section 8 program require a hearing prior to the termination of Section 8 benefits. 42 U.S.C. § 1437d(k); 24 C.F.R. § 982.555. Federal courts have interpreted these statutes and regulations as requiring a hearing that comports with due process prior to the termination of the benefits. *E.g., Basco*, 514 F.3d at 1182-1184; *Ferguson v. Metropolitan Development and Hous. Auth.*, 485 F.Supp. 517, 527 (M.D. Tenn. 1980)("MDHA's practice of terminating participation in the Section 8 program without a pretermination hearing constitutes state action depriving the plaintiff of an essential interest protected by the due process clause of the Fourteenth Amendment."); *Bouie v. New Jersey, Dept. of Comm. Affairs*, 972 A.2d 401, 409 (N.J. Super. Ct. App. Div. 2009)(stating "The governing HUD regulations recognize that the receipt of rental assistance under the Section 8 program is a public assistance benefit that cannot be terminated without affording the recipient a pre-termination hearing in conformity with the principles set forth in *Goldberg*.").

For there to be constitutionally-adequate due process, the process must be meaningful. *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965). Here, the FCHA's denial of meaningful due process to Ms.

---

[1] The Eleventh Circuit adopted all decisions the former Fifth Circuit made prior to October 1, 1981, as binding precedent. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

9

Hamilton is a denial of due process under the Constitution. HUD, through its statutory authority under 42 U.S.C. § 1437d(k), has directed local housing authorities to observe certain standards and procedures when deciding whether to terminate Section 8 assistance, *see* 24 C.F.R. §§ 982.552-555, and to develop and follow a local administrative plan that incorporates HUD requirements. 24 C.F.R. § 982.555(e)(1). A hearing officer's "[f]actual determinations relating to the individual circumstances of the family *shall be based on a preponderance of the evidence presented at the hearing.*" 24 C.F.R. § 982.555(e)(6)(emphasis added). At the hearing, the housing authority bears "the burden of persuasion and must initially present sufficient evidence to establish a prima facie case that [the participant has violated their program obligations]…Thereafter, the Section 8 participant has the burden of production to show [that they have not violated their program obligations]." *Basco,* 514 F.3d at 1182. At the hearing the "family must be given the opportunity to present evidence, and may question any witnesses." 24 C.F.R. 982.555(e)(5); Ex. 4.

In this case, the FCHA failed to meet their initial burden of persuasion under the due process requirements. The FCHA was not in attendance at the hearing; only the hearing officer and Ms. Hamilton were present. (Ex. 1, ¶¶ 17, 18 & 20; Ex. 5 at p. 2). The FCHA improperly shifted the burden in this case to Ms. Hamilton. The FCHA had the burden to show by a preponderance of the evidence that Ms. Hamilton committed a program violation that is grounds for termination. *Basco*, 514 F.3d at 1182. However, the FCHA failed to meet this burden. FCHA presented no evidence at the hearing – indeed, the FCHA did not even attend the hearing. It is clear that the termination hearing failed to comport with due process

or the governing regulations. *See* 24 C.F.R. § 982.555(e); Ex. 4 at 16-20; *see also Litsey v. Hous. Auth. of Bardstown*, No. 3:99CV-119-H, 1999 WL 33604017 at *5 (W.D. Ky. April 1, 1999)("no amount of process …can make up for the absence of evidence or for reliance on critical evidence in violation of federal regulations or the agency's own procedures.").

Following the hearing, the *hearing officer* must issue a prompt, written decision, stating briefly the reasons for the decision. 24 C.F.R. § 982.555(e)(6)(emphasis added). In rendering the decision, the hearing officer will consider (1) if the reasons for the PHA's decision are factually stated in the Notice, (2) if the PHA and the family were given the opportunity to examine any relevant documents in accordance with PHA policy, (3) if the evidence presented supports the PHA's conclusion, and (4) if the termination is for a basis specified in the HUD regulations and PHA policies. Ex. 4 at 16-20 to 16-21. Chapter 16 of the FCHA Section 8 Housing Choice Voucher Administrative Plan states that the hearing officer will issue to the family, no later than ten (10) days following the hearing, a written letter of decision which includes, in part: (1) a summary of the evidence presented at the hearing, (2) findings of fact based on a preponderance of the evidence, and (3) conclusions derived from the facts that were found to be true by a preponderance of the evidence. Ex. 4 at 16-21. To be sufficient for purposes of due process, a hearing officer's decision letter must be more than just a conclusory statement. *See Edgecomb v. Hous. Auth. of Town of Vernon*, 824 F. Supp. 312, 316 (D. Conn. 1993)("hearing officer's conclusory statement that 'there was a preponderance of the evidence that indicated that a Family member did engage in such drug related activity while on the Section 8 program'" was insufficient for purposes

of due process) *citing Hous. Auth. of King County v. Saylors*, 578 P.2d 76 at 79 (Wash. App. 1978), and *Goldberg,* 397 U.S. at 271.

Ms. Hamilton received two letters from FCHA following her hearing, but neither met the requirements of the HUD regulations or the FCHA Administrative Plan. Neither was issued within 10 days of her hearing, as called for in FCHA's own Administrative Plan. The June 19, 2014 letter was dated 15 days after her hearing and was from the Section 8 manager, not the hearing officer. (Ex. 6). It did not include a summary of evidence or findings of fact. The letter merely stated:

> This notice serves as confirmation of the determination reached at your informal hearing on June 4, 2014.
>
> Therefore, your rental assistance will terminate June 30, 2014.

The second letter, dated August 26, 2014, was from the hearing officer and was issued more than ten *weeks* after the hearing. (Ex. 5, pp. at 2-3). Again, the letter failed to include a summary of evidence presented at the hearing. The letter provides that the reason for terminating assistance is as follows:

> During your tenancy at 14 Ranshire Lane, Palm Coast, Florida 32164 ("Contract Unit"), you had been improperly paying an additional $200.00 per month in rent beyond what the Authority had previously determined and had advised you was your portion of the monthly rent based on your reported income. This conduct is a violation of Authority policy and/or HUD regulations/requirements and ground for termination of your housing assistance under the Authority's assisted housing program. Evidence provided by the Authority indicated that you have been engaging in the conduct since the beginning of your initial lease with the owner/management, or since December 1, 2008. The Authority's decision to terminate was supported by a preponderance of the evidence.

*Id.* Similar to the decision letter in *Edgecomb*, there is no indication of what evidence the hearing officer relied on in making those findings or conclusions. Clearly, the findings could

not have been based on evidence presented at the hearing as the FCHA neither attended nor presented any evidence at the hearing. The letters Ms. Hamilton received from the FCHA were grossly inadequate to satisfy the requirements of due process and the governing regulations.

Finally, the FCHA relied on a legally invalid basis for terminating Section 8 assistance to Ms. Hamilton. It alleged that Ms. Hamilton violated a program policy or HUD regulation by making a monthly "side payment" of $200.00 to her landlord since December 1, 2008. (Ex. 5, pp. 2-3). HUD regulations lay out obligations of the recipient family, 24 C.F.R. § 982.551, and enumerate reasons for which a family may be terminated from the program. 24 C.F.R. §§ 982.552 and 982.553. However, the regulations do not provide that making side payments are a basis for termination from the program. *Cf.* 24 C.F.R. §§ 982.451(b)(4) and 982.452(a). Nowhere do the HUD regulations state that participant families are obligated to refrain from or to disclose the making of additional payments to a landlord, or that making additional payments to a landlord is grounds for termination from the program. *Id.* By upholding the termination of Ms. Hamilton's Section 8 assistance based on a legally invalid basis, Defendants denied Ms. Hamilton the due process to which she was constitutionally due – as a meaningful review would have found that Ms. Hamilton did not violate a program policy or HUD regulation.

For the reasons above, there is a substantial likelihood that Ms. Hamilton will succeed on the merits of her due process claim against FCHA.

### III. PLAINTIFF WILL SUFFER IRREPARABLE INJURY IF THE INJUNCTION IS NOT GRANTED.

It is well-settled that the loss of housing assistance and resulting threat of eviction or homelessness is irreparable harm. *Roundtree v. U.S. Dept. of Hous. & Urban Dev.*, No. 5:09-cv-234-Oc-10GRJ, 2009 WL 7414663, at *7 (M.D. Fla. Aug. 28, 2009); *Basham v. Freda*, 805 F. Supp. 930, 932 (M.D. Fla. 1992) *aff'd*, 985 F.2d 579, 932 (11th Cir. 1993); *McNeill v. New York City Hous. Auth.*, 719 F. Supp. 233, 254 (S.D.N.Y. 1989) ("The threat of eviction and the realistic prospect of homelessness constitute a threat of irreparable injury, and satisfies the first prong of the test for preliminary injunctive relief.").

Ms. Hamilton was a participant in the Section 8 program for approximately 14 years. After her Section 8 assistance was wrongfully terminated by Defendants, an eviction action was filed by her landlord for nonpayment of rent and her lease was terminated effective October 31, 2014. She will be unable to secure safe, stable, affordable housing without continued housing assistance and faces the threat of homelessness unless injunctive relief is granted. Plaintiff has clearly satisfied the irreparable harm requirement for this Court to grant a preliminary injunction.

### IV. THE BALANCE OF HARDSHIPS WEIGHS IN PLAINTIFF'S FAVOR.

In determining the balance of the hardships, the Court must weigh the extent to which the participant's loss outweighs the government's interest in summary adjudication. *Goldberg v. Kelley* 397 U.S. 254 at 263 (1970). While some administrative benefits can be terminated without a hearing, "when welfare is discontinued only a pre-termination evidentiary hearing provides the recipient with procedural due process." *Id.* at 264. Given the "difficulty that people of lower income means in this country have in obtaining adequate

14

housing" and the potential dire consequences that the loss of Section 8 presents for low-income families, Section 8 "should not be taken from any such tenant lightly, but only for reasons which are at once culpable and significant." *Sweeney v. Hous. Auth. of Chester County*, 215 B.R. 97, 103 (Bankr. E.D. Pa. 1997) (citations omitted); *see also*, *Bush v. Mulligan*, 869 N.Y.S.2d 569, 572 (N.Y. App. Div. 2008)(noting that terminating assistance to Section 8 participant who suffered from dementia for failing to report additional income is "not only contrary to law, but shocking to one's sense of fairness."); *Riggins v. Lannert*, 796 N.Y.S.2d 93, 95 (N.Y. App. Div. 2005)(court reversed order terminating petitioner's Section 8 and ordered issuance of less severe penalty, finding termination of Section 8 so disproportionate to the petitioner's offense of breaching repayment agreement with PHA "as to be shocking to one's sense of fairness").

Here, Ms. Hamilton stands to lose her housing under a federally-funded program which provides the financial means for her to afford to pay for shelter for herself and her son. Ms. Hamilton is threatened with the loss of her Section 8 benefits and homelessness.

In contrast with Ms. Hamilton's personal hardships, the only damage Defendants will incur is that they will have to continue to provide housing assistance to Ms. Hamilton. Such monetary harm is contemplated by the Section 8 Housing Choice Voucher Program, which requires a PHA to continue providing housing assistance to participants who are accused of actions more serious that Plaintiff. 24 C.F.R. §§ 982.552(b)(1), 982.553(b) and 982.555 (2013)(before termination of assistance for illegal drug use, other criminal activity, or alcohol abuse, PHA is required to hold a termination hearing). This should not substantially burden Defendants as this is already a task that Defendants have been carrying out for Ms. Hamilton

for approximately the last 5 years. Moreover, even Chapter 16 of FCHA's own Administrative Plan tends to weigh in favor of providing housing benefits over termination in this case. Chapter 16 of the Administrative Plan states that if "the grounds for termination are not specified in the regulations or in compliance with PHA policies, then the decision of the PHA will be overturned [by the hearing officer]." Ex. 4 at 16-21. The grounds for termination in this case were Ms. Hamilton's overpayments to the landlord. However, the regulations create no obligation for the tenant to refrain from making additional payments to a landlord, and do not list the making of additional payments as a reason for termination from the program. *Cf.* 24 C.F.R. §§ 982.451(b)(4), § 982.452(a). Accordingly, the harm to Plaintiff clearly outweighs any harm that Defendant would incur. *Cunningham v. Adams*, 808 F.2d 815, 822 (11th Cir. 1987)(stating that monetary harm is not an irreparable injury). The Plaintiff is merely seeking to continue her rental assistance during the pendency of the litigation, assistance that Defendants had already been providing.

## V.   IT IS IN THE PUBLIC'S INTEREST TO PROVIDE INJUNCTIVE RELIEF.

Granting a preliminary injunction in this case will serve the public interest. *Mathews v. Eldridge,* 424 U.S. 319, 347 (1976). To determine whether the public interest will be served by granting injunctive relief, courts look at the legislative intent in enacting the statute sought to be enforced. *E.g., Seeler v. Trading Port, Inc.*, 517 F.2d 33, 40 (2d Cir. 1975); *Freightliner, L.L.C. v. Puerto Rico Truck Sales, Inc.*, 399 F. Supp. 2d 57, 78 (D.P.R. 2005); *CBS, Inc. v. PrimeTime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1345 (S.D. Fla. 1998). The Section 8 Program was created for the purpose of "aiding low-income families in obtaining a decent place to live and of promoting economically mixed housing." 42 U.S.C. § 1437f(a)

(2013); *see also Hill v. Richardson*, 740 F. Supp. 1393, 1393 (S.D. Ind. 1990)(stating that the reason for housing subsidies is the "difficulty that people of lower economic means in this country have in obtaining adequate housing…"). The Section 8 Program also allows for a supply of rental housing for the poor without creating subsidized housing projects that often fall into disrepair. *Hill*, 740 F. Supp., at 1393 ("It is hoped that these noble goals will produce the side benefits of increasing the supply of rental housing available to the poor and avoiding the creation of new economic ghettos which many argue can be the result of publicly owned, subsidized housing projects.").

Accordingly, the public interest is served in the correct administration of the Section 8 Program, *Basham v. Freda*, 805 F. Supp. at 932, and provision of safe, decent housing. *Johnson v. United States Dep't of Agric.*, 734 F.2d 774, 788 (11th Cir. 1984). It is in the public interest to protect the rules and regulations that were created to promote and sustain Section 8 housing assistance. The provision of a pre-termination hearing to program participants is one of those rules. That there is a cost to the government associated with granting a preliminary injunction is not alone a reason to deny an injunction as being against the public interest. *Johnson*, 734 F.2d at 788. Finally, to deny injunctive relief while this litigation is pending would allow Defendants to continue to undermine the purpose of the Section 8 Program without due process of law.

## VI. THE BOND REQUIREMENT SHOULD BE WAIVED AS PLAINTIFF IS OF LOW-INCOME.

The Federal Rules of Civil Procedure provide that a court may only issue a preliminary injunction if the movant gives security in an amount to be determined at the discretion of the court. Fed. R. Civ. P. 65(c); *Baldree v. Cargill, Inc.*, 758 F. Supp. 704, 707

(M.D. Fla. 1990), *aff'd*, 925 F.2d 1474 (11th Cir. 1991). The Court may, however, waive all payment for indigent plaintiffs. *E.g,. Campos v. INS,* 70 F. Supp. 2d 1296, 1310 (S.D. Fla. 1998) ("Because plaintiffs in the instant case indigent . . ., this case implicates the public interest and the balance of hardships tips sharply in favor of plaintiffs. . . this court does not require plaintiffs to give security."); *Bass v. Richardson*, 338 F. Supp. 478, 490 (S.D.N.Y. 1971) ("It is clear to us that indigents, suing individually or as class plaintiffs, ordinarily should not be required to post a bond under Rule 65(c)"); *Denny v. Health & Soc. Services Bd.*, 285 F. Supp. 526, 527 (E.D. Wis. 1968)("Poor persons. . . are by hypothesis unable to furnish security as contemplated in Rule 65(c), and the court should order no security in connection with this preliminary injunction.").

Here, Plaintiff is low-income, has requested a fee waiver in filing this case, and seeks injunctive relief to reinstate her Section 8 voucher in order to obtain safe, affordable and stable housing. This case, as discussed above, implicates the public interest and the balance of hardships weighs greatly in Plaintiff's favor. Accordingly, this Court should not require Plaintiff to give security.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court issue a Preliminary Injunction requiring that Defendants reinstate Plaintiff's Section 8 Housing Choice Voucher, order Defendants to timely process any and all documents necessary for Plaintiff to obtain new housing and restrain Defendants from acting to limit or terminate Plaintiff's participation in the Section 8 Program pending final resolution of this action.

Respectfully Submitted,

*/s/ Natalie N. Maxwell*
NATALIE N. MAXWELL
Fla. Bar No. 16746
Community Legal Services of Mid-Florida, Inc.
1610 SE 36th Ave.
Ocala, FL 34471
Phone: (352) 629-0105
Fax: (352) 629-8877
nataliem@clsmf.org
**Trial Counsel**

LAUREN R. MOODY
Fla. Bar No. 64012
Community Legal Services of Mid-Florida, Inc.
128 Orange Ave.
Daytona Beach, FL 32114
Phone: (386) 255-6573
Fax: (386) 257-6824
laurenm@clsmf.org

SERENA PINES
Fla. Bar No. 48791
Community Legal Services of Mid-Florida, Inc.
216 S. 6th Street
Palatka, FL 32177-4608
Phone: (386) 328-8361
Fax: (386) 328-4902
serenap@clsmf.org